## L. & N. Railroad Co. v. The Burley Tobacco Society, et al.

(Decided February 20, 1912.)

## Appeal from Bourbon Circuit Court.

1. Burley Tobacco Society—Bourbon County Board of Control— Action Against Railroad for Destruction of Warehouse Caused by Sparks from Engine—Power of Society and Board Over Tobacco Pooled—Power to Prosecute Suit—Parties.—The Bourbon County Board of Control, by its articles of incorporation, is empowered to assist the growers of Burley tobacco to receive remunerative prices on tobacco before it is finally sold by the society, and is authorized to place tobacco pledged with it under control of the Burley Tobacco Society for sale upon such terms and conditions as may be provided between the Board of Control and the farmers who have pledged their tobacco with it. The tobacco destroyed by fire originating from sparks from the railroad company's engine was in the custody of the Burley Society, and its branch, the Board of Control; they were the proper custodians of it, and under their contract with the growers they were warranted in taking such steps as were necessary to protect the interests of the growers. Therefore, the Society and the Board not only had ample power to prosecute the suit to recover for the alleged negligent destruction of the tobacco, but it was their duty to do so. The addition of the names of the individual members of the pool by the amended petition was not necessary, and the court might with propriety have sustained the motion to strike these names from the record as parties plaintiff, but his failure to do so was not prejudicial error, for the right to sue being in the society and the board, this right was not lessened or abridged by making these individuals parties.

2. Same—Refusal to Transfer to Equity.—The cause of action being perfect in the society and board it was immaterial whose particular crops were burned, and the trial court did not err in refusing to transfer to equity, or to permit the second amended answer, making additional parties, to be filed.

3. Illegal Trust or Combine—Restraint of Trade.—As the charge was not made that the Burley Society is attempting to raise the price of tobacco above its real value, it certainly was not acting in violation of any law of this State in accepting the pooled tobacco

under the terms of the pooling contract and handling and holding it as it was at the time of its destruction.

BENJAMIN D. WARFIELD, EMMET M. DICKSON and McQUOWN & BECKHAM for appellant.

CLAUDE M. THOMAS, TALBOTT & WHITLEY and JOHN R. ALLEN for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

On November 1st, 1910, two warehouses at Millersburg, Kentucky, containing three hundred and thirty-two hogsheads of tobacco, were destroyed by fire. The tobacco was practically a total loss. These warehouses were under the control of the Burley Tobacco Society, or its branch, the Bourbon County Board of Control, and the tobacco therein had been pledged to it by the members of the Burley Society. Conceiving that the fire originated from sparks negligently thrown upon the roof of one of the houses by a passing engine, the Burley Society sued the Louisville & Nashville Railroad Company for $50,000 damages, the value of the tobacco destroyed. It joined with it the Bourbon County Board of Control and two members of the Burley Tobacco Society.

The defendant insisted that there was a misjoinder of parties, and sought to have the petition dismissed as to the individual plaintiffs and the Bourbon County Board of Control. All motions looking to these ends were overruled. The defendant thereupon answered, in three paragraphs. The first is a traverse. The second sets up the fact that the tobacco in these warehouses was owned by a great number of people, and asks that the cause be transferred to equity and referred to a commissioner, in order that the ownership of the tobacco might be ascertained and these owners required to prosecute the suits in their individual capacity. The third paragraph pleads that the Burley Tobacco Society and the Bourbon County Board of Control constitute an illegal trust or combine, organized and operated in restraint of trade and in violation of the State and Federal Constitutions, and that, therefore, plaintiffs were without authority to prosecute the suit.

Plaintiffs filed an amended petition, making some of those whose tobacco was stored by The Burley Tobacco Society in these warehouses parties plaintiff. The affirmative matter in the answer was traversed, and the

case proceeded to trial, during the progress of which it was developed by the testimony of one of plaintiff's witnesses just whose tobacco was in these warehouses. Thereupon defendant offered to file an amended answer, setting up the true ownership of this tobacco, and asked to have the suit prosecuted in their name. The court refused to permit this amendment to be filed, though it is made a part of the record. The trial resulted in a verdict in favor of plaintiffs for $40,000, and the railroad company appeals.

The Burley Tobacco Society is a corporation, organized under the laws of this State for the expressed purpose of fostering and promoting the interest of all growers of burley tobacco by disseminating general information concerning burley tobacco, to encourage the improvement of the quality, methods of growing and handling burley tobacco, to act as agents of the growers of burley tobacco and others in selling tobacco, and thereby assist them in securing remunerative prices, and to that end co-operate with the Boards of Control and Warehouse Companies of growers of burley tobacco, in counties entitled to representation on the Board of Directors of this Society, and act as agent of all such county organizations, etc. The Bourbon County Board of Control is an arm or branch of said society. The parent body is controlled by a board of directors and officers, chosen from delegates or representatives from the local or county boards. The Bourbon County Board of Control is, by its articles of incorporation, empowered to assist the growers of burley tobacco to receive remunerative prices for the tobacco, and to secure money for them as advances on their tobacco before it is finally sold by the society. It is empowered to issue warehouse receipts to them for their tobacco, stored in warehouses or other places, and it is upon these warehouse receipts that the owners of the tobacco are enabled to procure loans. The Bourbon County Board of Control is also expressly authorized to place the tobacco pledged with it under the control of The Burley Tobacco Society for sale upon such terms and conditions as may be provided between the Board of Control and the farmers or tobacco growers who have pledged their tobacco with it, the whole scheme or plan being to so handle the tobacco of the growers as to make it profitable to them, and, where a sale is delayed, to enable those of the growers who are in need of money to borrow money upon their

crops.  The pledge which each farmer is required to sign when pooling his tobacco, among other things, provides that, in consideration of the benefits to be derived by the parties to the contract, The Bourbon County Board of Control and The Burley Tobacco Society are appointed sole agents for the purpose of receiving, managing, commingling, handling, warehousing, inspecting, insuring, grading, financing and selling all of the said tobacco in such manner and on such terms as the said Burley Tobacco Society may prescribe, pursuant to its charter and by-laws, and for such purpose he transfers and assigns to and invests in such agents the title and right of possession to said tobacco pursuant to their charter and by-laws, and agrees to deliver the same on demand at such point in said county as said society may designate, etc. Under a pledge of this character, all of the tobacco which was destroyed by fire was delivered at the warehouses in Millersburg by the growers.  It had been re-handled, graded and prized and was then stored ready for shipment.  It was in the custody of The Burley Tobacco Society and its branch, The Bourbon County Board of Control, and whether they be treated as bailees, trustees, or agents with power to sell is immaterial, for, viewed in any light, they were the proper custodians of the tobacco, and, under their contract with the growers, were warranted in taking such steps as were necessary to protect the interests of the growers therein.  Under its management, the tobaccos so received from the farmers were commingled, graded, and so mixed that it would be impossible to reinvest the individuals with their tobacco which went into the pool should the society desire to do so.  The whole scheme is such that the individuality of the tobacco pooled by the farmers was lost, and instead of an interest in the tobacco, by his contract each farmer had merely an interest in the proceeds that would result from its sale.  The control and power of the Burley Tobacco Society and the Board of Control over the tobacco is absolute, and the only limitation placed upon the power of sale by the pooling contract is that the tobacco shall not be sold below its graded price.  We conclude that the society and its local board not only had ample power to prosecute the suit to recover for the alleged negligent destruction of this tobacco, but it was their duty to do so.  The farmers, by the act of pooling their tobacco, became members of the society and of the particular local board to which their tobacco was delivered.

Hence, in reality the farmers in the aggregate constitute the society and they alone have any interest in the sale of the tobacco pooled. The addition of the names of individual members of the pool was not necessary, and the trial court might with perfect propriety have sustained the motion to strike these names from the record as parties plaintiff. But his failure to do so was not prejudicial error, for the right to sue being in the society and the Board of Control, this right was not enlarged, lessened or in any wise abridged by making these individuals parties. The recovery by the society and the Board of Control is a perfect and complete bar to any right of action on the part of the individuals whose tobacco was burned.

The point is made that, as the parties whose tobacco was burned were numerous, the court might well have permitted some few to sue for all, as all had a common interest in the tobacco. But we refrain from considering this line of argument, as it is unnecessary for the purposes of this case.

From the foregoing it is apparent that the trial court did not err in refusing to transfer the case to equity, or to permit the second amended answer, making additional parties, to be filed. The cause of action being perfect in the Burley Society and the Bourbon County Board of Control, it was immaterial whose particular crops went to make up this tobacco burned, since, for the purposes of this litigation, it was the tobacco of the Burley Society and the Bourbon County Board of Control.

As to the third ground of defense interposed by defendant in its answer, there are two reasons which are amply sufficient in our judgment to justify the ruling of the trial court in refusing to permit the introduction of evidence in support thereof, or submitting to the jury the issue of fact tendered by that plea. In the first place, this court has no less than three times held, in the cases of Owen County Burley Tobacco Society v. Brumback, 128 Ky., 137; Commonwealth v. International Harvester Co., 131 Ky., 551, and Commonwealth v. Hodges, 137 Ky., 233, that the Burley Society is not operated in violation of the law so long as it does not attempt to raise the price of leaf tobacco above its real value. As the charge was not made in the case at bar that it had been or was attempting to do so, it certainly was not acting in violation of any law of this State in accepting this pooled tobacco

under the terms of the pooling contract, and handling and holding it as it was at the time of its destruction.

But it is urged that the society, as operated, is and was an illegal combination in restraint of trade, and that the act under which it is operating is violative of section 198 of the Constitution of Kentucky and the Fourteenth Article of Amendments to the Constitution of the United States. For the purposes of this case we deem it unnecessary to enter into a consideration of this question, for even though it be conceded that everything charged by appellant in this particular is true, still it would afford it no defense for the negligent destruction of this property, if it did so. We are aware that courts have gone a long way in their effort to protect the people against the encroachments of trusts, monopolies, and other combines with monopolistic tendencies, but we have found no authority holding that the property of such monopoly, trust or combine, operated in violation of the Federal Statute, or in restraint of trade, could be either intentionally or negligently destroyed by any one and the owner thereof held to be without remedy or right to redress. If one might negligently destroy the property of another and escape liability on the ground that the property so destroyed was the property of an illegal combination or trust, he might with equal propriety forcibly take possession of it and resist its recovery by the owner upon the same ground. The position is utterly untenable.

In the case of Connolly v. Union Sewer Pipe Co., 184 U. S., 540, the Sewer Pipe Co. was seeking to recover of Connolly money upon certain notes which he had executed to it. In defense thereof he pleaded that the plaintiff was engaged in an unlawful pool in violation of the law; second, that it was an illegal combination in restraint of trade in violation of the statutes of the State of Illinois, where the suit was pending, and third, that the plaintiff was a combination, operated in restraint of trade among the several States in violation of the Sherman anti-trust law. The Supreme Court, in an elaborate opinion, held that the answer in no particular presented a good defense, even though the charge therein, that the plaintiff in fact was an unlawful trust, was true.

If such defense may not be interposed in an action upon a contract, where the party seeking to enforce it is charged with being a trust and operating in restraint of trade, there is all the more reason for holding that it presents no defense to an action on the part of one charged

to have been injured through the negligence of another. If the Burley Tobacco Society and the Bourbon County Board of Control are, as charged, illegal combinations, operating in restraint of trade and in violation of the Sherman anti-trust law, they may be subject to fine or the imposition of such other penalties as the law prescribes. They may be dissolved or prohibited from further continuing in business, but they are certainly as much entitled to the protection of the law as an individual would be in cases where his property had been negligently destroyed, and the trial court correctly held that the third paragraph of the answer presented no defense whatever.

On the question of fact as to whether or not the warehouses were set on fire by sparks from a passing engine of appellant company, the evidence is quite conflicting. Many witnesses testify that they saw the particular engine which is alleged to have started the fire pass, and they testify that it was pulling hard and emitting or sending forth great quantities of sparks and live cinders. To combat this evidence the company introduced its officers and employes whose particular duty it was to inspect its engines, and particularly those who had inspected this engine, and they testify that it was equipped with one of the latest, most modern and approved spark arresters, and that it was in perfect adjustment. It also introduced the employes in charge of this train, and they testify that when the engine passed the warehouses it was not pulling hard, but was rolling by, as it were. With the evidence thus conflicting, it was proper that the case should be submitted to the jury and they left to determine this disputed question of fact. It is not seriously contended by counsel for appellant that the case should not have gone to the jury on the question of fact.

It is urged that the court erred in the admission of evidence in this, that it permitted certain of plaintiff's witnesses to testify as to the value of the different grades of tobacco shown to be in the warehouse burned. The various grades were established by the testimony of those who graded, handled and put up this tobacco. Tobacco, like many other articles of commerce, is known to the trade and those generally who deal in it by the types or grade into which it is divided or assorted. Lug, leaf, tip and trash have a distinct and well-known meaning to those familiar with the trade; and when the witnesses who were called upon to testify as to the value of

the various grades of tobacco destroyed had qualified themselves by showing that they were familiar with the market value of these grades of tobacco at that time, the court did not err in permitting them to testify upon this point. In fact, the testimony of those familiar with tobaccos and the handling of them and the values of the different grades thereof was the very best testimony that could be produced as to values.

Lastly, it is most earnestly argued that the instructions did not properly present the law of the case as authorized by the pleadings and the facts; that the court erred in telling the jury that if the spark arrester was not properly adjusted, whereby sparks and live cinders were permitted to escape, etc., and set fire to the buildings, they might find for the plaintiffs, when, as a matter of fact, there was no evidence at all tending to show that the spark arrester was not properly adjusted, but on the contrary, there was evidence showing that it was properly adjusted. Plaintiff's testimony was to the effect that this engine at the time it passed these warehouses just a few minutes before the fire was emitting large numbers of sparks and live cinders, and upon this point the evidence is overwhelming in favor of plaintiff. In fact, there is a unanimity among the witnesses who testify upon this point. To offset or rebut this evidence, it is insisted for the company that the engine was equipped with the most modern and best spark arrester in use, and that it was in perfect adjustment, and that the train was not puffing or pulling hard, so as to cause the sparks and hot cinders to be emitted by the engine. Both of these statements could not possibly be true. If the engine was, as alleged, equipped with the character of spark arrester stated, and it was in perfect adjustment and was not pulling hard, no sparks at all should have been emitted, or certainly not many, and none of the magnitude described by many of the witnesses. This testimony is wholly irreconcilable. The spark arrester may have been properly adjusted when last examined by those whose duty it was to see to it, and it may not have been in perfect adjustment at this time. In fact, it must not have been, for in no other possible way could this great discrepancy between the testimony of the witnesses be accounted for. The court plainly told the jury that if the spark arrester was of the character indicated and was in proper adjustment, and those in charge of the engine were guilty of no negligence in its operation,

there could be no recovery, even though a spark from the engine did set fire to the warehouse.

Aside from this, however, appellant is in no position to complain because the court told the jury that if the spark arrester was not properly adjusted and by reason thereof, etc., the fire was started and the property destroyed, they should find for the plaintiff, because this identical idea was embodied in an instruction offered by it. If the court had given the instruction asked by appellant's counsel, it would have told the jury in almost the identical language used by the court that if the spark arrester was not in proper adjustment, and the fire was caused thereby, etc., plaintiffs might recover.

The instructions, singly and collectively, presented the law of the case as warranted by the evidence under the pleadings as fully and fairly as appellant was entitled to have them.

Instruction No. 4 is objected to upon the ground that the court did not tell the jury that the $50,000, which was the highest sum they might award, was the amount claimed in the petition. This identical question was fully considered by this court in the recent case of Louisville & Nashville Railroad Co. v. Engleman's Admr., 144 Ky., 19, and it was there held that the failure of the court to insert the words "the amount claimed in the petition" or "the amount sued for" was not prejudicial error. As the reasons for this ruling are fully stated in that opinion, the question is not further considered here.

The verdict in this case is large, but the loss is correspondingly large, and, after a careful consideration of the record, we are satisfied that appellant had a fair and impartial trial, and that the verdict of the jury as to damages awarded was fully justified by the proof.

The judgment is, therefore, affirmed.