**THE WEST POINT.**

**Petition of LUCKENBACH.**

(District Court, D. Massachusetts. March 19, 1921.)

No. 1027.

1. Wharves ☞22—Owner consenting to fire on barge does not assume risk.
      Consent by the owner of a wharf to the keeping of fire under the boilers of a barge, sunk alongside the wharf, to operate the barge's pumps, which was for the benefit of the wharf owner as well as of the barge owner, does not give implied authority to maintain such fires when the wind made it dangerous to the wharf, or establish assumption of risk to the wharf of fire caused by sparks from the barge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Shipping** ⊛209(3)—**Evidence held to show wharf fire was caused by sparks from barge.**

On petition to limit liability of the owners of a barge, where the owner of a wharf claimed damages for the burning of the wharf, evidence *held* to show by preponderance thereof that the fire originated from sparks from the barge, by reason of the negligence of the servants of the owners of the barge; it being unnecessary for the claimant to exclude every other possible cause of the fire.

3. **Shipping** ⊛209(3)—**Damage to wharf by fire held without knowledge or privity of barge owner.**

In proceedings to limit the liability of the owner of the barge, evidence *held* to show that the negligence of the employés on the barge, which caused a fire on the wharf, occurred without the privity and knowledge of the barge owners.

In Admiralty. Petition by Edgar F. Luckenbach, as managing owner and on behalf of himself and the other owners of the barge West Point, to limit their liability, in which the Pardee & Young Company filed answer and claim. Claim allowed, and petition referred to assessor to hear evidence and report.

Carter & Carter, of New York City, and Edward E. Blodgett, of Boston, Mass., for petitioner.

G. Philip Wardner, of Boston, Mass., for claimant.

HALE, District Judge. On November 13, 1912, the barge West Point was chartered by her owners to the Logan Coal Company, to transport a cargo of coal from Philadelphia to the Pardee & Young Company at Fall River, Mass. Pursuant to the charter, 16,019 tons of coal were so shipped. On December 3, 1912, the barge, with its cargo, arrived at Fall River and anchored late in the afternoon. In the afternoon of the same day two steam tugs belonging to the Staples Transportation Company took the barge in tow, and proceeded to tow her to Pardee & Young Company's coal dock, where the barge was to discharge. A little later on the same day the barge grounded off the end of the Pardee & Young Company's wharf, and it was afterwards found that she had struck a rock, and that a hole had been punched in her bottom. About 4 o'clock the next morning she was found to be full of water. Thereupon constant efforts were made by her owners to pump out the water, but without success. She was afterwards floated by the T. A. Scott Company; but in the meantime, on December 9, 1912, while the barge was still lying grounded in the dock, the buildings on the wharf of the Pardee & Young Company, near which the barge lay grounded, took fire and were destroyed. The barge owners thereafter filed a libel in this court against the two steam tugs which towed the barge into the dock, and against the Pardee & Young Company, to recover damages arising from the stranding and grounding of the barge. This suit was settled by the payment of $6,000 to the barge owners by the Staples Transportation Company, the owner of the tugs, and the Pardee & Young Company.

Subsequently the Pardee & Young Company brought suit, on the common-law side of this court, against the barge owners, to recover

for the damage caused by the fire, alleging that it was set by sparks which, through the negligence of the barge owners, their servants and agents, were permitted to escape from the barge and to be carried by the wind to the property of Pardee & Young Company. Thereupon Edgar F. Luckenbach, as managing owner on behalf of himself and the other owners of the barge, brought a petition to limit liability; the Pardee & Young Company filed its answer and claim in the limitation proceedings. The case now comes before the court upon this petition of the barge owners, and the answer and claim of the Pardee & Young Company.

The claimant contends that the fire was caused by sparks from the barge, due to the negligence of the barge owners, their agents and servants, and presents its claim against them for damages arising from such burning; and the claimant contends that the evidence now before the court, and largely of a circumstantial character, proves its case as alleged in its claim.

The petitioners contend that the whole case of the claimant is built upon suppositions and conjectures, and not upon any definite evidence that sparks from the barge actually caused the fire, and that the claimant has failed to prove by a preponderance of evidence that the injury occurred through the neglect of the petitioners, or that there was any fault on their part. They urge further that, in any event, they are entitled to limit their liability to the value of the barge.

The testimony discloses these facts: Claimant's wharf was 85 feet wide; it faced the northwest; the bow of the barge projected 15 or 20 feet beyond the northeast side; the barge was 220 feet long, and its stern must have projected over 100 feet beyond the southwest side of the wharf. From the northeast corner of the wharf to the barge was 4 feet. From the northwest corner of the wharf to the barge was 39 feet. Three feet from the front of the wharf there was a tower a little more than 98 feet high. The engine room in the tower was inclosed on four sides, 30 feet from front to back, 25 feet wide. This room contained all the hoisting machinery. Under the engine room was the car platform, 30 feet distant from the wharf. Underneath the car platform was an open space. Adjoining the engine room was the hoisting house, a wooden building, 10 feet wide, 12 feet deep, and 12 feet high, inclosed on all sides, with a door on the side towards the street, opening onto the car platform. The roof was shingled with 2 per cent. pitch; the northeast side of the building was 12 feet from the northeast side of the wharf. Its floor was made of 2-inch spruce planks. The building was sheathed, and, as the sheathing had dried, quite large cracks were left. On the southwest side of the wharf was the boiler room, inclosed on all sides, with a door on the southwest side. This room was 12 feet square and 18 feet high; it was right up against the southwest side of the engine room and continued down to the dock. This room contained one boiler, 6 feet in diameter and 16 feet high. In the boiler a stack projected up through the roof of the boiler room to a height of 50 feet above the wharf. The top of the stack was 15 feet below the southwest wall of the engine room. The engine room had a peak roof, the peak being 5 feet higher than the side

walls. The southwest side of the boiler room was 25 feet from the southwest side of the wharf. The stack stood midway between the front of the walls of the boiler room, about 8 feet northeast of the southwest wall of the boiler room. There was a door between the hoisting house and the engine room, which was kept shut. A 4-inch steam pipe, inclosed in asbestos, with iron rings, ran from the boiler through the hoisting house into the engine room. There were two windows, 30 by 60 inches each, in the engine room, 2½ feet above the floor on the side next to the barge. Six days after the barge grounded the fire took place, on December 9th. The weather was bright and clear. The wind was from 20 to 25 miles an hour, blowing from the barge to the wharf.

The testimony tends to show that the fire started in the old hoisting house; that this house had not been in use for about seven years; that it was kept locked; that there was nothing in it but a bag of waste, two barrels of oil, and a certain amount of dust; that the line of the northeast wall of the old hoisting house, extended towards the barge, would pass within 6 feet of her stack.

The testimony, accompanied by the photographs, shows further that the top of the bulwarks of the barge was considerably above the floor of the wall; that the top of the regular stack was not more than 22 feet lower than the floor of the hoisting house; that the stack was directly opposite a point half way between the northeast wall of the hoisting house and the northeast side of the wall; that it was 28 feet from the stack to the old hoisting house, that the wind was blowing from 20 to 25 miles an hour on the morning of the fire, from the barge to the wharf, and straight up the wharf; that on the same morning sparks were seen coming from the barge; and there is certain testimony, which I admitted, that sparks were seen coming from the barge on the days preceding the fire. The testimony tends to show that the fire started inside the hoisting house; but it also shows that there were large cracks in the walls and in the floor, and it is urged that sparks, striking the surface of the roof, would be likely to blow off, in the high wind, and lodge in the cracks. It does not appear that there had been a high wind in the same direction on any day between the grounding of the barge and the day of the fire.

The testimony tends to induce the belief that the agents of the barge owners must have had knowledge of the dry, inflammable character of the structure on the wharf, and of the danger of sparks escaping from the stack of the barge and setting fire to the structure upon the wharf when there was a high wind.

There is evidence that several of the agents of the barge owners were in and about the barge on the morning of the fire, and it seems clear that the agents and servants of the barge owners ought to have known of the liability of the escape of sparks under all the conditions in the case.

It is urged by the barge owners that the damages and injuries which the claimant sustained were not caused through any fault of the barge

owners or of those in charge of the barge, but that they were caused, as their answer to the claim sets forth, as follows:

"By a fire which started on the premises of Pardee & Young Company from overheated machinery, engines, and boilers and their connections and appliances, which was caused through the acts and negligence of the agents and servants of Pardee & Young Company, who were in charge and had the management of the said machinery, engines, and boilers and their connections and appliances, or through the acts of the agents and servants of Pardee & Young Company, or of some third person or persons who were permitted by Pardee & Young Company to enter upon said premises, who had or used a lighted match, or who had a lighted cigar or pipe, over whom the petitioner had no control, and for whose acts the petitioner is not liable or responsible, or was caused by spontaneous combustion, or was caused by sparks which emitted from the wrecking steamers or steam barges engaged in salving the said barge West Point and her cargo of coal, over which the petitioner had no control.

"If, however, it should be shown that the said fire was caused by sparks which were emitted from the barge West Point (but which the petitioner denies), then that was caused through the acts, negligence, and fault of the agents and servants of the said Pardee & Young Company, or of some third person or persons, over whom the petitioner had no control, and for whose acts the petitioner is not liable or responsible, in building, starting, drawing, or raking the fire of the said barge West Point, or in putting fresh coal on said fire and that from the time the said barge stranded and grounded to the 9th day of December, 1912, when it is claimed said fire started, and up to the time the said barge was raised and towed away, Pardee & Young Company, or its officers, agents, and servants did not protest against the building or starting of fire in the furnace under the boiler of said barge or continuing to do so, for the purpose of getting up steam to be used in the preservation of the said barge and cargo; but that said Pardee & Young Company assumed the necessary risk of keeping up steam, and which risk was inherent in the nature of the business in which the engine and boilers of said barge were employed, and which was for the benefit of said company; and it was for the benefit and at the implied request of said Pardee & Young Company, and without protest from said company, that a fire was kept in the furnace of said barge so steam could be kept up in the boiler of said barge.

"That the said damages and injuries which said Pardee & Young Company alleges it sustained, if any, were done and occasioned without the privity or knowledge of your petitioner and the other owners of the said barge West Point."

Upon an examination of the proofs it is found that there is little credible testimony of the fire originating from smoking and little foundation for the inference that such was the cause of the fire.

Although spontaneous combustion is possible in hot weather, there is not sufficient testimony to indicate that this was the foundation of the fire.

It may be said generally that the testimony of the barge owners relating to the cause of the fire presents merely possibilities.

It is urged by the barge owners that the barge was heated by soft coal, and that such coal does not give off sparks; but the proofs show that sparks are likely to be emitted when the boiler is under a forced draft, or where fires are being drawn. There is some evidence that there was wood on board, used "for lighting fires," although there is no affirmative testimony that such wood was in use on the morning of the fire.

[1, 2] It is urged, also, that something may be made of the fact that the people in charge of the barge obtained water and steam from the boiler on the wharf. It is not clear whether, on the morning of the fire, any steam was being supplied by the boiler on the wharf. The evidence does show that the claimant permitted the use of its boiler and steam, but it cannot be contended that, by so permitting the barge to take water and steam, the claimant gave any implied authority for the pumping operations, under all conditions of wind and weather. The pumping operations were for the benefit of all. They were not only for the benefit of the petitioners and the claimant, but for the benefit of any ships which had occasion to use the dock, or for those who were to be supplied with coal from the wharf. It cannot be contended that, if a vessel anchored in the dock for the purpose of delivering coal, and should take fire by sparks from the barge, a recovery would be prevented by the fact that the pumping operations were for its benefit. In my opinion there is nothing in the evidence as to the conduct of the claimant which can affect its right of recovery. It is not necessary for the claimant to exclude every other possible source of injury: Louisville & N. R. Co. v. Bell, 206 Fed. 395, 398, 124 C. C. A. 277; Railway v. Jones, 192 Fed. 769, 773, 113 C. C. A. 55, 47 L. R. A. (N. S.) 483.

Judged by the principle involved in the above cases, I think the testimony in the case at bar fairly induces the conclusion that the claimant has met the burden of showing, by a preponderance of evidence, that the fire originated from sparks from the barge and by reason of the negligence of the agents and servants of the owners of the barge.

[3] The claim is allowed, I find, however, that the loss or damage was without the privity and knowledge of the barge owners.

Otis T. Russell, Esq., of Russell, Russell & Russell, No. 185 Devonshire street, Boston, is appointed assessor, to hear evidence and report on the amount of the claim. Upon the coming in of the report of the assessor, further action will be taken in relation to limitation proceedings.