## DAVLIN v. HENRY FORD & SON, Inc.

Circuit Court of Appeals, Sixth Circuit.
June 16, 1927.

No. 4553.

1. **Trial ⟨⟩139(1)—Granting defendant's motion for directed verdict is error, if evidence in most favorable aspect supports plaintiff's right of action.**

If evidence, regarded as strongly for plaintiff as reasonably possible, would support right of action, granting defendant's motion for directed verdict is error.

2. **Trial ⟨⟩139(1)—Trial court need not submit case, unless evidence is substantial enough to warrant verdict.**

Trial court is not required to submit case to jury merely because some evidence has been submitted by party on whom lies burden of proof, unless it is apparent that such evidence is substantial enough to warrant a verdict.

3. **Negligence ⟨⟩121(1)—One suing tractor manufacturer for death resulting when seat broke must prove defendant failed to exercise diligence in construction.**

In action against manufacturer of tractors to recover for death alleged to have resulted when seat occupied by decedent thereon broke, plaintiff has burden of proving that defendant failed to exercise degree of diligence which circumstances demanded, and which should have been anticipated as the effect of reasonable use.

4. **Negligence ⟨⟩136(18)—Evidence in death action against tractor manufacturer held insufficient for jury on question of defendant's lack of diligence in construction.**

In action against manufacturer of tractor for death, alleged to have resulted when seat on tractor broke, evidence *held*, as matter of law, insufficient to sustain plaintiff's burden of proving negligence in performance of duty cast on defendant in exercising proper degree of diligence in construction thereof.

In Error to the District Court of the United States for the Eastern District of Michigan; Charles C. Simons, Judge.

Action by Jane E. B. Davlin, executrix, against Henry Ford & Son, Inc. Judgment for defendant, and plaintiff brings error. Affirmed.

George E. Brand, of Detroit, Mich. (Lanigan & Lanigan and William Van Dyke, all of Detroit, Mich., on the brief), for plaintiff in error.

Clifford B. Longley, of Detroit, Mich. (Lucking, Hanlon, Lucking & Van Auken, of Detroit, Mich., on the brief), for defendant in error.

Before DENISON and MOORMAN, Circuit Judges, and KILLITS, District Judge.

KILLITS, District Judge. In December, 1918, the decedent, Joseph V. Davlin, whose executrix is plaintiff in error herein, purchased a tractor manufactured by defendant in error. During the ensuing three months Mr. Davlin used the machine for various purposes on his farm. Early in April, 1919, while using it to draw a double-disc harrow up an inclined farm roadway, located on the side of a hill with a sharp descent to the left, he suffered the injury because of which this action was instituted. Several hours thereafter he was found by his sister lying somewhat on his right side, with the right drivewheel of the tractor, which was equipped with large traction lugs, pressing against the lower part of his back; the lugs holding him down. One foot was caught between the housing of the tractor mechanism and the tongue of the disc harrow. When the tongue was lifted, the foot fell down. The right discs were against his trunk, with his head and shoulders free. Back and to the right of Mr. Davlin, and about three feet from the right rear wheel, and about a foot from his head, lay the seat, with its spring support still attached. The tongue of the disc harrow was somewhat short —a stub of wood (4″x4″), with a metal end coupler. It was regularly attached to the tractor by a clevis which was then disengaged and lying on the ground. The tongue was thrust upward against the tractor, the engine of which was not running; but the transmission was in reverse. The left front wheel of the tractor was off the grade at the top of the sharp descent referred to. The left discs and left rear wheel of the tractor were in contact, Mr. Davlin's body intervening between the discs on the right and the right rear wheel.

The seat was supported by a flat, stiff spring, curved to the shape of a flattened letter S, and about 17 inches long between its engagements with the seat and the machine, respectively. It was provided that this spring should be fastened under the tool box to the transmission housing by a ¾-inch cap screw with a lock washer. The hole in the spring which engaged this screw had been made by punching downward, leaving a manifest burr on the under side, and was slightly larger than the screw, giving occasion to some slight play at this point. The construction plan of the tractor involved a perfectly flat end to the spring for about 5 inches, with the cap screw hole in the middle of the flattened surface, so that stability there would be assisted by the friction of the spring upon the flat housing when the screw was tight. However, the spring which was in evidence showed a slight curvature upward longitudinally on each side of the screw hole, and the burr around it, on the under side, as was manifest from an examination of the exhibit, had sustained a wearing or a smoothing because of friction with the housing, engendered by use. As the tractor and disc harrow were coupled together on this occasion, the tongue of the latter was directly under the seat and spring.

The bolt or cap screw, which was also in evidence, had broken in two at the point approximately where it left the screw hole in the spring to enter the housing; but it is difficult to determine whether the fracture was the result of shearing or of twisting, although it is apparent that the diameter of the screw, at the point of fracture, had become diminished by wear. The tool box, which was of metal, was so close to the housing that, when the lower end of the seat spring was placed between the two, one could use the seat, at least in driving over a smooth surface for a short distance, without fastening the spring to the housing with the cap screw.

More than a year after the accident, but at the scene, the upper part of the cap screw and the lock washer were found, after the washings of rivulets had been raked over and examined. Mr. Davlin was a large man, weighing approximately 225 pounds. The mechanics of the situation, considering that 17 inches was the distance from the fastening of the spring to the housing, thence to its engagement with the seat, involved a strain upon the cap screw, because of the accommodation in the seat of a man of Mr. Davlin's weight, of approximately 3,600 pounds, the ratio being 17 to 1. This strain was anticipated in the designing and construction of the machine; the testimony disclosing, without

dispute, that defendant planned, in its construction, the employment of a reasonably sufficient factor of safety at this point.

Other testimony exists, respecting scratches and appearances upon the seat spring and housing, which needs no recital here. Mr. Davlin was conscious when found, but unable to extricate himself. Death ensued in four days. Three explanations by Mr. Davlin of the accident are in evidence. To his brother, who had been called, and who released him only by jacking up the right rear wheel, he said: "The seat broke, and I guess I lost control of it." After his removal to his house, answering his physician's question, he said, as quoted by his wife, who was present: "I reversed the tractor. The seat broke. I fell, and the wheel ran on me." Substantially to the same effect was the testimony of the physician, and that of a friend who was present. In cross-examination of the widow was brought out a statement made by the decedent to her, and in the presence of a neighbor, on the following day, as follows: "He said he had pulled up the hill with the discs to come home. One disc was striking on the right bank, so that he steered to the left, to clear that bank, and he got off and unhooked from the disc, and intended to bring his tractor back on the road straight and hook on again. He got off, put it in reverse to back, and, as he did the seat broke and he fell."

At the conclusion of arguments to the jury on the evidence, the court below granted the motion of the defendant to direct a verdict, and it is this action which is assigned for error in the proceedings before us. Many assignments of negligence are made in the declaration in this case. For present consideration it is not important to note any save that in the first count, which charges failure to build the tractor with the seat and seat spring assembled and attached in such a manner that the same would not break down under the weight of an individual like the decedent while the tractor was in proper use. Other charges of negligence involve the use of improper materials in constructing the cap screw. We are compelled to agree with the court below that the evidence did not justify the submission on this last question to the jury, and it is sufficient now to note whether the broader charge of negligence, just recited, was supported by the testimony, considered with its natural inferences in an aspect most favorable to the plaintiff.

[1, 2] It is unnecessary to more than state the proposition that if, regarded as strongly for the proponent as reasonably possible, there is substantial evidence to support her

right of action, to grant a motion to direct a verdict for the opposite party is error, and that, under such circumstances, this court will not proceed to weigh the whole evidence. As a corollary to this proposition, it is established, however, that the trial court is not required to submit a case to the jury merely because some evidence has been introduced by the party upon whom lies the burden of proof, unless it is apparent that such evidence is substantial enough to warrant a verdict. Commissioners of Marion County v. Clark, 94 U. S. 278, 24 L. Ed. 59; Brandes v. Barber (C. C. A.) 13 F.(2d) 65. The subject and authorities were fully considered by this court in Hardy-Burlingham Mining Co. v. Baker, 10 F.(2d) 277.

[3] It is important to consider the duty of the defendant in building and marketing machines of the nature in question here. Notwithstanding some of the speculations of the defense, it must be assumed in behalf of plaintiff that the cap screw broke while the seat was occupied by the decedent. The defendant could not be held, in the putting out of the tractor in question, as an insurer of its safety under all the circumstances to which the machine might be subjected. Its duty was to use reasonable care in employing designs, selecting materials, and making assemblies, in the construction of a tractor, which would fairly meet any emergency of use which could reasonably be anticipated. It follows, therefore, that here the burden was on the plaintiff to show, by substantial evidence, that, in respect to the securing of the seat spring to the housing, defendant failed to exercise that degree of diligence which the circumstance demanded, to the result that the housing connection failed when subjected to strains which should have been anticipated as the effect of reasonable use. Before plaintiff was entitled to a submission of the case to the jury, the nature of the use to which the machinery was subjected and the cause of the fracture of the cap screw should have been reasonably indicated in the testimony.

[4] Applying these principles to the record, and diligently attempting to portray the circumstance from the materials at hand, we find it impossible to consider the plaintiff's case to have been supported by that acceptable evidence which, most favorably considered, would sustain the burden of proving negligence in the performance of the duty cast upon the defendant. Here the evidence does not substantially tend to show that there was a lack of care in the selection and testing of materials, or in the designing or assembling of parts, or of a weakness in the cap screw due to deficiencies of substance, which the defendant, in the exercise of diligence charged to it, should have apprehended; it does not fairly permit an inference that the defendant's liability is reasonably probable, and distinctly more probable than any other suggested explanation. Reflection upon the record produces several independent theories explanatory of the result and its causes, each having some support from the evidence, but none of more consequence than speculation. Louisville, etc., Railway Co. v. Bell (C. C. A.) 206 F. 395.

In Toledo, etc., Railway Co. v. Howe, 191 F. 776, 782, this court said: "There is a sharp line to be drawn between inferences which would logically follow a given state of facts and which in themselves constitute substantial evidence, and such a state of the evidence, on the other hand, as to give rise to mere conjecture or guessing, or to involve the weighing of probabilities. No man's property should be taken from him on the mere guess that he has committed a wrong imposing a legal liability because of a probability among other probabilities that the accident for which recovery is sought might have happened in the way charged."

The state of the record in this case impresses us as similar to the situation before this court in Virginia, etc., Railway Co. v. Hawk, 160 F. 348, 352, for we have here, as in the facts in that case, a difficulty in comparing the validity of possible speculations pro and con as to how this accident occurred and why, making the language of Judge Cochran in that case pertinent: "But a case should never be left to a jury simply on a question of probabilities, with a direction to find in accordance with the greater probability. Probabilities may help out items of evidence from which an inference can be drawn, but cannot take their place. To allow a jury to dispose of a case simply upon a weighing of probabilities is to turn them loose into the field of conjecture, and to have the rights of the parties determined by guess."

In Bristol Gas & Electric Co. v. Deckard (C. C. A.) 10 F.(2d) 66; Shadoan v. Railway Co. (C. C. A.) 220 F. 69; Worthington v. Elmer (C. C. A.) 207 F. 306, and Railroad Co. v. Bell, supra, there existed in the testimony concrete proof of some negligence ascribable to the defendant upon which, against a motion to direct for the defendant, could be predicated reasonable inferences of proximate cause. In that respect this record is clearly distinguishable.

Judgment affirmed.