## GENERAL INS. CO. OF AMERICA v. NORTHERN PAC. RY. CO.

Circuit Court of Appeals, Ninth Circuit. October 15, 1928.

No. 5484.

James B. Howe and Donald G. Graham, both of Seattle, Wash. (James B. Howe, Jr., of Seattle, Wash., on the brief), for appellant.

C. H. Winders, L. B. Da Ponte, and Arthur E. Simon, all of Seattle, Wash., for appellee.

Before RUDKIN, DIETRICH, and HUNT, Circuit Judges.

HUNT, Circuit Judge. The plaintiff insurance company seeks reversal of a judgment rendered against it, following a motion for a nonsuit, in an action to recover from the railroad company, damages by reason of a fire alleged to have been caused by sparks from defendant's locomotive, alleged to have been negligently constructed and operated.

The insurance company had issued two policies of fire insurance to one Agor, covering wool and sacks while contained in a warehouse at Badger, Wash. On May 2, 1926, at about 9:50 or 10 o'clock p. m., the warehouse and its contents were destroyed by fire. The complaint alleged that the fire was

negligently started by sparks or cinders, and that the locomotive was so negligently constructed and operated as to permit and cause sparks, cinders, and live coals to escape and to start a fire, which spread to the wool and sacks stored in the warehouse. The insurance company paid the loss, and, under claim of subrogation to Agor's rights, instituted this action. Defendant admitted that the property was destroyed by fire, but denied the allegations of negligence. At the conclusion of plaintiff's testimony, judgment in favor of the railroad company was ordered. The insurance company appealed.

At Badger the railroad tracks run in a northerly and southerly direction. There is neither agent nor telegraph operator at the place. The burned warehouse, in which the wool was stored, was built from 3 to 4 feet above the ground and was open from the bottom to the ground. It had a shingle roof, and was between 35 and 40 feet in length, situated east of the main line track. A wagon road runs alongside the building. Between the main line and the warehouse there were a passing track and a spur, which served the warehouse. On the west side of the main line track were a railroad toolhouse and an abandoned gas storage tank. As the railroad approaches Badger, there is a heavy uphill grade. During the day of the fire the wind had been blowing from the west. About 9:45 p. m. a freight train consisting of 70 cars and 2 engines came upgrade toward Badger, and passed the warehouse. About 10 o'clock Fernandez, a sheep herder, who lived in a shack about 150 yards south of the warehouse and on the same side of the track, saw the warehouse on fire on the south or southwest side, which was the corner nearest the railroad tracks. He testified that the fire appeared to have started from the ground, and that it was burning toward the roof, and quickly consumed the whole building. He stated that at previous times he had seen Russian thistles in the vicinity, and that when the wind blew he had seen them blowing; that on some previous occasions he had seen much smoke and sparks coming from locomotives as they came up toward Badger; that he went to bed on the evening of the fire about 7:30 or 8 o'clock, and did not see any smoke or sparks on the night of the fire; that there were only three men at the station on the day of the fire; that the section foreman had a cabin north of the warehouse, and that another employé of the railroad lived in a cabin west and nearly opposite the warehouse. To the south of the warehouse there was an abandoned cistern and an icehouse a distance of about 450 feet from the cabin of the section foreman.

Fernandez testified that there were some sheep men, with their herds, in the vicinity of Badger, and that about the date of the fire there had been some trouble between Fernandez and another sheep man; that on the afternoon of the day of the fire Fernandez asked the section foreman and his helper to go with him into the hills and drive some sheep which belonged to another man away from the Agor range; that when they reached the place where the sheep were they found a boy in charge, and told him to tell his father to keep off of Agor's range. Witness testified that the warehouse was generally kept locked, and that usually the key was left, either in the door or in a hole in the floor by the door; that if any one reached into the hole he could find the key; that there had been some sheep shearers at Badger some 10 days prior to the fire, and that they had slept in the warehouse. It appeared, also, that in the débris after the fire some cooking utensils were found. The fireman of the helper engine which pulled the freight train up to and through Badger testified that, when the train went through Badger, he saw no fire, but that when he reached Vista, a run of 15 or 20 minutes from Badger, he looked back and remarked to the engineer that it looked as if the whole town of Badger was afire; that in his opinion there was nothing in connection with the operation of the engines which could have had anything to do with the fire. There was no testimony as to what fuel was used on the locomotive, of what, if any, equipment was used to prevent the emission of sparks, or what, if any, methods of operation were employed to prevent the escape of sparks or cinders.

The action is based upon negligence arising out of construction and operation of defendant's locomotive, and, as no person saw fire directly communicated to the warehouse, the plaintiff was obliged to make proof of communication of the spark or fire by circumstances sufficient to uphold a finding that the fire was set by a spark from the locomotive of the defendant company.

Two locomotives were pulling the long train up a stiff grade, upon which, at other times, engines had been seen to emit a great deal of smoke and some sparks; the country was dry and there were tumble weeds and thistles in the vicinity of the warehouse; there was no fire in any building near the warehouse; only three persons lived anywhere near the warehouse; no one was seen in the vicinity of the building that day; no one

had slept in the building for ten days or more prior to the fire; there was no fire when the train passed, but some 15 minutes later the building was a mass of flames, seen by the fireman of the train when it reached Vista. When first seen by the sheep herder, the fire appeared to have started on the side or corner nearest the tracks and to be burning from the ground up. It is the opinion of a majority of the court that, although the question is not free from doubt, there were facts and circumstances sufficient to call for submission to the jury.

■ But, however that may be, we are of one mind in deciding the question whether proof that sparks or cinders from the locomotives hauling the train set the building on fire, raised the presumption that there was negligent construction or operation of the locomotive or locomotives from which the sparks or cinders were emitted. We are referred to decisions which hold that where the circumstances lead to the conclusion that the origin of the fire was from a locomotive, there is a prima facie case and the burden of showing that there was no negligence in construction or operation of the locomotive is upon the railroad company. The Supreme Court of Washington seems to have accepted that view. Thorgrimson v. Northern Pacific Ry. Co., 64 Wash. 500, 117 P. 406. Shearman & Redfield on Negligence, § 675 et seq.; Elliott on Railroads, § 1766. But in the better considered cases in the federal courts it is held that the question is one of general law, and that it cannot be said that the mere ignition by sparks is prima facie evidence of negligence of the railroad company Such was the opinion expressed by Judge Taft for the Circuit Court of Appeals of the Sixth Circuit in Garrett v. Southern Ry. Co., 101 F. 102, 49 L. R. A. 645, a case quite like the one at bar, where the court, after recognizing that there is contrariety of decision, cited the Nitroglycerine Case, 15 Wall. 524, 21 L. Ed. 206, and invoked the principle that one who charges negligence must prove it by showing that defendant, by his act or by his omission, has violated some duty incumbent upon him which has caused the injury complained of.

Again, in Toledo, St. Louis & W. R. Co. v. Star Flouring Mills Co., 146 F. 953, the Circuit Court of Appeals, speaking through Judge Lurton, after citing decisions presenting the conflict upon the question whether evidence that a fire was started by escaping sparks constitutes, without more, a prima facie case of negligence, affirmed Garrett v. Southern Ry. Co., supra. The court held

that the more logical view is that the gravamen of an action for loss of property by fire communicated by sparks is negligence, and that "inasmuch as a railway company may lawfully use locomotives it cannot be made liable for a loss from sparks emitted, unless plaintiff shows such sparks to have been negligently emitted," and that the burden of showing negligence is upon him who affirms it. See, also, Cincinnati, N. O. & T. P. R. Co. v. South Fork Coal Co. (C. C. A. 6) 139 F. 528, 1 L. R. A (N. S.) 533; Louisville & Nashville R. Co. v. Bell (C. C. A. 6) 206 F. 395.

■ We agree with the general doctrine of the federal cases cited. Slight evidence may be sufficient to show negligence, but where, as here, there is really nothing beyond the fact that the building was burned by sparks which, by common knowledge, must to some extent escape from a locomotive hauling a train, there is no evidence which calls for rebuttal.

The judgment is affirmed.