## COMMERCIAL STANDARD INS. CO. v. GORDON'S TRANSPORTS, Inc.

### No. 10109.

Circuit Court of Appeals, Sixth Circuit.

March 25, 1946.

Lowell W. Taylor, of Memphis, Tenn. (Cate & Cate, of Nashville, Tenn., and Lowell W. Taylor, of Memphis, Tenn., on the brief), for appellant.

Frank J. Glankler, of Memphis, Tenn. (Canale, Glankler, Loch & Little, Frank J. Glankler, and John R. Gilliland, all of Memphis, Tenn., on the brief), for appellee.

Before SIMONS, MARTIN and MILLER, Circuit Judges.

SIMONS, Circuit Judge.

The appellant was the insurer upon a public liability issued in the name of A. W. Gordon of Memphis, who was engaged in a long-haul trucking business. One of the trucks covered by the policy being involved in an accident, a suit followed in Illinois, resulting in a default judgment against the appellee corporation, which it subsequently paid, and for the recovery of which it sued the insurer, and, upon the reformation of the contract, obtained the judgment which is here assailed.

The assigned errors are many. The insurer asserts it had issued no policy to the corporate appellee; that there was no basis, either in mutual mistake or fraud, for its reformation; that in any event reformation was barred by limitation under Tennessee law; that it had no written notice of the accident, as required by the insurance contract, and no written or other notice of the Chicago suit.

So far as the facts are undisputed, Gordon, prior to and during part of 1933, was doing business in his individual capacity with his insurance needs entrusted to Treadwell and Harry, agents for the appellant and other casualty insurance companies. In August, 1933, Gordon incorporated his business and transferred all of his trucks and equipment to a corporation styled "Gordon's Transports, Inc." (hereinafter called Gordon's), and became its president. A prior insurer having cancelled a Gordon policy, Treadwell and Harry secured for him the issue of the policy here involved, effective November 8, 1933, but in his name as an individual and not in the name of the corporation. It specifically covered the trucks formerly owned by Gordon and subsequently transferred to the corporation, including the truck involved in the Chicago accident. That truck was in a collision at

Chicago with an automobile driven by Franklin T. Robinson. The insurer made an investigation through a Chicago attorney who advised it, on March 17, 1934, that Gordon's was not responsible. How the insurer was informed of the accident does not appear, but on June 21, 1934, its Chicago lawyer advised it that, nothing having been heard from the appellee, the file of the case could be retired. The insurer also had its Memphis lawyer examine the truck involved in the accident, and through him learned that it was one of those covered by the policy.

While this investigation was going on there was apparently some criminal proceeding in Chicago, for on November 22, 1933, Friedberg, Gordon's Chicago representative, wrote its Memphis office that they had lost their case but had been advised by the judge that they had a good claim against Robinson for repairs and other charges; that he could not locate any company by the name of Commercial Standard, and requested the correct name and address of Gordon's insurer at once. Whether this letter was answered does not appear, but Baker, Gordon's office manager, had wired Friedberg that the appellant carried the insurance on the truck. On July 25, 1934, summons issued in the Superior Court of Cook County, Ill., against Gordon's Transports, at the suit of Robinson, requiring defendant to appear on the third Monday in August or the first Monday in September. The summons was served August 1 on Connery, Gordon's Chicago representative, who forwarded it on the same day to the main office in Memphis. Nothing is shown as to the action taken by the home office on receipt of the summons, nor upon receipt of a telegram from Chicago stating that answer to the summons must be filed by September 3 or a default judgment would be taken.

An inter-office memorandum shows that more than a year later, on October 22, 1935, Martin, who succeeded Connery as Gordon's Chicago manager, advised Gordon's that Connery had been summoned to appear in the Robinson suit on October 29. Endorsed on the memorandum in the handwriting of Baker, is a notation to the effect that service was on the wrong party, with the added notation, "serve on Martin and reset." Whether anything was done in response to this memorandum, does not appear. Nearly two years later, on October 1, 1937, a default judgment for $15,000 was

392

entered in the Superior Court of Cook County, in favor of Robinson.

Nothing appears to have been done in respect to the judgment for two months, until on December 3, 1937, Gordon's wired the insurer advising it of the judgment, with the request that it handle it to conclusion. The insurer replied that it had no record of the suit but would investigate without waiving rights to deny liability. It thereupon wrote Quick, its Memphis lawyer, requesting him to see whether there was any evidence that notice of the Robinson suit had been given to its agent. Quick interviewed Treadwell and Harry, reviewed their files, but found no evidence of any notice of the institution or pendency of the suit. The agents also reported that they knew nothing of the matter. The appellant then sent its Dallas claim attorney to Memphis, and he could find no evidence, oral or documentary, that the insurer had been notified of the suit. In May, 1942, Gordon's paid the Robinson judgment, and on December 2, 1942, brought suit against the insurer in the Circuit Court for Shelby County, Tenn., whence it was removed to the court below.

The policy involved requires the assured to give immediate written notice to the insurer at its office in Dallas, Tex., of any loss or accident, a like written notice after suit is brought against the assured. The assured is required to forward immediately to the company every summons or other process as soon as the same has been served, and it is provided that failure to comply shall release the company from all liability and render the policy void. Gordon's presented no proof of compliance with the provisions respecting notice of the accident or the suit, but relied upon proof of a course of conduct in its relations with Treadwell and Harry, by reason of which it contended that written notice was waived and oral notice accepted.

When the insurer filed its answer to the Gordon's declaration on January 5, 1943, it specifically denied that it had ever issued the policy sued upon, to the corporate plaintiff. It was not until its amended declaration was filed on May 27, 1944, that Gordon's asked to have the insurance contract reformed to the extent that Gordon's Transports, Inc., be substituted for the assured A. W. Gordon, doing business as Gordon's Transports, on the ground that there was mistake of fact in respect to the assured when the policy was written. The insurer again answered and pleaded the Tennessee

Statute of Limitations, §§ 8592 and 8601, Williams' Code of Tennessee Annotated, which requires that certain specific actions and all others not expressly provided for, shall be commenced within ten years after the cause of action accrued. As interpreted in Barnes v. Barnes, 157 Tenn. 332, 8 S.W.2d 481, the effect of this statute is that if one who is injured by a mistake in the drafting of a contract, permits ten years to elapse without discovery or suit, his action is barred and the period of limitation starts to run from the execution of the instrument and not from the date the mistake is discovered or should have been discovered.

This defense was met by Gordon's by assertion of the principle that an amendment to a pleading which does not state a new cause of action, will relate back to the original suit, and to this the court gave consideration, without the aid of the jury. The issue was whether reformation of a contract to substitute a new contractual party for one originally designated, came within the rule, and upon consideration of the decided cases the court concluded that it did. It also concluded that in view of the circumstances of the case, the policy having been issued upon the truck involved in the accident, and it having been the intention of both parties that the policy should issue to its owner, there was a mutual mistake in its drafting which the court was empowered to correct by reforming the contract. It then submitted the case to the jury upon specific interrogatories as to the existence of a custom which permitted the assured to communicate to the defendant's underwriting agency, orally, the fact that a summons or other process had been received, whether such custom was followed by the assured in respect to Robinson's suit and whether there was a waiver by the insurer of the requirement that the summons or other process be immediately forwarded to the company. The jury answered all three interrogatories in the affirmative. Verdict and judgment followed in the penal sum provided by the policy.

By reason of the view we take of the evidence, hereinafter discussed, we may assume, without deciding, that the District Court was right in granting reformation of the policy. Treadwell and Harry were general agents of the insurer. The facts so indicate and the Tennessee Statute so provides. § 6087, Code of Tennessee; Maryland Casualty Co. v. McTyier et al., 150

Tenn. 691, 266 S.W. 767, 48 A.L.R. 1168. While the agents were not informed of Gordon's incorporation, it clearly was the intention of the assured to receive, and of the company to issue, a policy that would protect the real owner of the trucks specifically covered by the policy. In such or analogous circumstances the Tennessee courts invariably grant reformation of a contract so that it will express such intention. Dickens v. St. Paul Fire & Marine Ins. Co., 170 Tenn. 403, 95 S.W.2d 910; Phillips v. North River Ins. Co., 14 Tenn.App. 356; City of Lawrenceburg v. Maryland Casualty Co., 16 Tenn.App. 238, 64 S.W.2d 69; Merriam v. National Life & Accident Ins. Co., 169 Tenn. 291, 86 S.W.2d 566. The federal courts have likewise so held. Liverpool & London & Globe Ins. Co. v. Crosby, 6 Cir., 93 F.2d 647; National Reserve Ins. Co. v. Scudder, 9 Cir., 71 F.2d 884. We may also assume that the proposed amendment to the pleading seeking reformation, related back to the date of the original declaration, so that the Tennessee Statute of Limitations was not a bar to the reformation of the insurance contract. While no case had been cited and none has been found wherein it has been adjudicated that a substituted action is not a new one where an individual plaintiff has been replaced by a corporation, there are well reasoned cases which hold that an amendment which describes a party-plaintiff as suing in a capacity other than that in which the original suit was brought, does not constitute a new action. Missouri, Kansas & Texas Ry. Co. v. Wulf, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355; Weldon v. United States, 1 Cir., 65 F.2d 748. Similarly the substitution of the same defendant in a new capacity does not change the nature of the action, Clinchfield Ry. Co. v. Dunn, 6 Cir., 40 F.2d 586, 74 A.L.R. 1276, certiorari denied 282 U.S. 860, 51 S. Ct. 34, 75 L.Ed. 761—and amended recitals, even such as add circumstances vital to recovery, are likewise without that effect. New York Central & Hudson River R. Co. v. Kinney, 260 U.S. 340, 43 S.Ct. 122, 67 L.Ed. 294; Manhattan Oil Co. v. Mosby, 8 Cir., 72 F.2d 840, certiorari denied 283 U.S. 623, 55 S.Ct. 237, 79 L.Ed 710.

We come then to a consideration of the proofs in order to determine whether there was substantial evidence of a waiver by the insurer of the provisions of the policy requiring written notice of the accident, a like notice of the suit, and the requirement that the summons or other process be immediately forwarded to it. We need spend little time upon the question of notice to the company of the accident. It made the investigation. In whatever manner it was informed, whether orally or in writing, it knew that one of the trucks specifically covered by its contract of insurance, was involved in a collision. It is not now in position to claim that notice of the accident was not given. In any event, it was not thereby prejudiced and the jury was fully warranted in finding from the circumstances that it had notice.

The insurer's contention that it had no notice of the Chicago suit rests, however, upon an entirely different basis. It denied receiving notice, either orally or in writing. Its denial was made from the beginning, insisted upon throughout the controversy with the assured, and is not now barred by any rule of estoppel. Careful investigation failed to discover timely evidence of notice, either in its own records, the records of Treadwell and Harry, or those of Gordon's. Nothing was discovered as to the summons served on Gordon's representative in Chicago until Gordon personally brought the books and records of the company to a pre-trial deposition in response to a subpoena duces tecum, when the summons was found in its file, together with a forwarding letter from its Chicago office to the Memphis office, and in respect to it Gordon deposed that the original summons had either been in his file or in the file of his attorney from the time he received it until the time his deposition was taken.

Gordon's claim of waiver is based solely upon a custom or course of practice in its transactions with Treadwell and Harry. Baker, who handled all transactions with the agents, was a very careful and meticulous man. He testified that he always notified the agency of everything that might affect it. He even called the agent at his house, at night, and on week-ends. Treadwell had urged him to give him prompt notice of everything on the telephone. Treadwell himself testified to having accepted verbal notice of accidents, claims and suits, and had never declined to accept such notice. Baker, however, refused to say that notice of the Chicago suit was given to Treadwell and Harry, either in writing or orally, or that the summons had been forwarded to either the insurer or its agents. It happened too long ago for him to remember, and Gordon didn't know.

■ There are two infirmities in this proof, which inescapably fail to qualify it as substantial evidence either of a recognized course of practice between insurer and assured or that the practice was followed in this particular instance. There can be no doubt of the probative value of a person's habit or custom as showing the doing, on a specific occasion, of the act which is the subject of the habit or custom. Sec. 92, Wigmore on Evidence, 3rd Ed. But as the author points out, "It is easy to see why, in a given instance, something that may be loosely called habit or custom should be rejected because it may not in fact have a sufficient regularity to make it probable that it would be carried out in every instance or in most instances. Whether or not such sufficient regularity exists must depend largely on the circumstances of each case."

■ In the first place, the custom or practice here relied upon to be available to the plaintiff, must derive from a course of practice pursued in transactions between insurer and assured, and while the defendant is bound by the acts of its agents it is bound only by acts when performed as its agents. There is not a particle of proof in the record that Treadwell and Harry had ever before accepted an oral notice of an accident or a suit, or waived the forwarding of a summons on behalf of the appellant insurer. Indeed, there is no proof that Gordon's ever had a prior policy, issued by it. The inferences are all the other way. Its previous insurance had been placed with another company. It must be observed that there was no proof here of any general custom in the insurance business to waive policy provisions in respect to notice of accidents or suits thereon, and no such custom is relied upon. The proof is limited to a course of dealing with Treadwell and Harry as representative of insurers other than the appellant, and there is no proof that the agents had waived the policy provisions for this insurer, in transactions with other policy holders, or that the insurer knew of such practice by the agents on behalf of other principals.

Secondly, even though the proofs were sufficient to establish a course of dealing between plaintiff and defendant, by which notice of suit and the forwarding of summons was waived, this but permits of an inference that the practice was followed in the instant case. An inference cannot, however, stand in the face of established or admitted facts or in the face of another inference equally reasonable. As the Supreme Court pointed out in Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S. Ct. 391, 393, 77 L.Ed. 819, "where proven facts give equal support to each of two inconsistent inferences, in which event, neither of them being established, judgment, as a matter of law, must go against the party upon whom rests the necessity of sustaining one of these inferences as against the other, before he is entitled to recover." In the present case the plaintiff relies solely, without a particle of corroborative evidence, upon an inference that it gave notice of the suit to the insurer because Baker had been careful to give such notices more than eleven years ago, despite the fact that Baker was unwilling to testify that he gave such notice. On the other hand, the insurer, which had undertaken to investigate the accident, had no record of the suit. Its agents, who were, by all the indicia of the record, friendly to the plaintiff, likewise had no record of the suit or of notice to them or by them to their principal, and the assured had no record of having given notice either to the insurer or its agents. Finally it is discovered that the summons, possession of which was of the highest importance to the insurer and its attorneys in order that they might know where the suit was brought, by whom and when an answer was required, was found to repose in the files of the plaintiff more than ten years after service upon its agent. It would be unreasonable to put upon the insurer a duty to examine court records, both state and federal, in each of the widely separated jurisdictions, where Robinson might have planted his suit, throughout the years between the accident and the barring of Robinson's claim by limitation. The insurer was subjected to greater hazard in the Chicago suit than was the assured. The assured was protected, at least so it thought, and the insurer was not. It is highly improbable that it would have neglected to defend the suit if it had notice of it. It is common knowledge that insurance companies do not do business that way. That the insurer had no knowledge of the suit is as good a guess as any other.

The cases are legion which hold that to submit to a jury an issue which involves but a choice of probabilities, is to submit to the jury a decision based not upon substantial evidence, but upon conjecture, surmise and guess. We need cite only a few in this cir-

cuit. Parker v. Gulf Refining Co., 6 Cir., 80 F.2d 795; Davlin v. Henry Ford & Son, 6 Cir., 20 F.2d 317; Louisville, etc., R. Co. v. Bell, 6 Cir., 206 F. 395; Toledo, etc., R. Co. v. Howe, 6 Cir., 191 F. 776, 782; Virginia & S. W. R. R. Co. v. Hawk, 6 Cir., 160 F. 348, 352. There is no substantial evidence that notice of the suit was given to the insurer, that the summons was forwarded to the insurer or that either notice or forwarding was waived. The court should have directed a verdict for the defendant.

Judgment reversed.