**C. F. W. CONSTRUCTION CO., Inc.,**
**Plaintiff-Appellant,**

**v.**

**The TRAVELERS INSURANCE COMPA-**
**NY and The Travelers Indemnity**
**Company, Defendants-Appellees.**

**No. 16428.**

United States Court of Appeals
Sixth Circuit.

July 13, 1966.

558

Robert W. Stevens, Fayetteville, Tenn., for appellant, Stevens & Bagley, Fayetteville, Tenn., on the brief.

Russell G. Lazenby and S. McP. Glasgow, Jr., Nashville, Tenn., for appellees, Glasgow & Adams, Nashville, Tenn., on the brief.

Before WEICK, Chief Judge, EDWARDS, Circuit Judge, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

The question on this appeal concerns the claimed liability of Travelers Insurance Company and Travelers Indemnity Company, defendants-appellees (hereinafter called Travelers), to plaintiff-appellant, C. F. W. Construction Co., Inc. (hereinafter called C. F. W.), on a certain policy of insurance issued by Travelers to C. F. W. The United States District Judge for the Eastern District of Tennessee, Winchester Division, entered a judgment in favor of Travelers on their motion for summary judgment. C. F. W. appealed.

C. F. W. was, at the time the policy in question was issued, and for several years prior thereto, engaged in the construction business which consisted, principally, of installing water and sewer systems. This type of work required the excavation of trenches and ditches and the laying, installing and covering of pipe lines therein. C. F. W. carried its comprehensive liability insurance with Travelers from 1950 to 1961.

Travelers issued its Policy No. SL-5629511 to C. F. W., effective September 30, 1956, for a period of one year. This is the policy which is the subject of this action and it will be referred to hereinafter as the Policy. This policy was a renewal of Policy No. SL-5241030 which had been effective between the parties for the previous year from September 30, 1955 to September 30, 1956. The Policy contained an endorsement known as Endorsement 6109. It is conceded that this Endorsement, if not removed from the policy by appropriate action of the parties, excluded from the coverage of the Policy the loss which C. F. W. seeks to recover in this action. Neither Travelers nor C. F. W. have a copy of Endorsement 6109 as actually known to have been originally issued with the Policy nor do they have a complete copy of the Policy.

On or about August 1, 1956, C. F. W. entered into a contract with the City of Nashville to install sanitary and storm sewer lines in certain streets of the City. This contract contained a "save harmless" clause for the benefit of the Owner. In October or November of 1956, during the progress of the sewer construction, and while the Policy was in force and effect, property of R. D. Herbert & Sons Company was damaged.

The Herbert Company claimed that the damage was a result of negligence in the construction and brought an action in the State Court against both C. F. W. and the City of Nashville. A jury verdict

was returned in favor of the Herbert Company in the sum of $7500 and against only the City of Nashville. Judgment was entered on the verdict and after it was affirmed on appeal, C. F. W. paid the judgment on behalf of the City of Nashville under the "save harmless" clause of its contract. C. F. W. then brought the present action against Travelers to recover from them the amount of the judgment, its attorneys' fees and all of the costs it expended in defending the Herbert Company lawsuit.

C. F. W. has no cause of action unless the exclusion contained in Endorsement 6109 was removed from the Policy prior to the damage to the property of the Herbert Company or unless there was an endorsement on the policy for contractual coverage under the "save harmless" clause of the contract with the City of Nashville. It had been the practice to remove the 6109 endorsement on a job to job basis. When C. F. W. desired to have this exclusion removed one of its representatives would call Robert C. Allen, Jr. of the Carlee Allen Agency and would give the name of the jobsite for which the request was being made. Allen would then notify the underwriting office in Nashville. Travelers would give this job information to its engineering department which would usually make an on-the-job inspection. An endorsement would be issued by the Nashville office and delivered to C. F. W. The request would generally be made by C. F. W. about three weeks before the commencement of the work. C. F. W. would then be billed for an extra premium for this additional coverage. Neither C. F. W. nor any representatives of Travelers have any record of the contract having been submitted to Travelers, of an appropriate endorsement having been issued or of an extra premium having been charged for additional coverage under the Policy.

█ █ A summary judgment ought not be granted in lieu of a trial except where it is clearly appropriate.

"This Court has on several occasions expressed the view that a trial judge should be slow in disposing of a case of any complexity on a motion for summary judgment, that while such a judgment wisely used is a praiseworthy and time saving device, yet such prompt dispatch of judicial business is neither the sole nor the primary purpose for which courts have been established, and that a party should not be deprived of an adequate opportunity to fully develop his case by witnesses and a trial, when the issues involved make such procedure the appropriate one." S. J. Groves & Sons Company v. Ohio Turnpike Commission, 315 F.2d 235, 237, C.A.6, Cert. Den. 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57, and cases therein cited. However under all of the facts of this case we conclude that summary judgment was an appropriate remedy.

█ The evidence upon which the district judge decided the motion for summary judgment consisted of extensive stipulations of counsel, a pre trial deposition of William R. Carter, president of C. F. W., and numerous affidavits. C. F. W. does not claim that it could produce more evidence in its favor at a trial. Rather its position is that the evidence before the trial judge, considered in the most favorable light to it as the plaintiff, was sufficient to present a jury question. The plaintiff had the burden to present such evidence, that if believed, the jury could draw reasonable inference that C. F. W. had submitted its contract to Travelers for a "save harmless" endorsement or had made a timely request to remove the exclusion of Endorsement 6109. If its evidence failed in this respect, the motion for summary judgment was properly sustained.

There are three items of evidence upon which C. F. W. relies. 1. It was a course of dealing for many years for Travelers to give such coverage as C. F. W. needed, upon the submission of its contract to Travelers. 2. Travelers issued a certificate to the City of Nashville certifying that they were the insurance carriers for C. F. W. on the job. 3. While C. F. W.'s President Carter

**560**

had no independent remembrance of submitting the contract to Travelers, he believed it had been done. He would testify that prior to the Herman Company damage, some representative of Travelers had assured him that another similar situation was covered by the Policy.

■ Mr. Carter frankly admitted in his affidavit and in his pre trial deposition that he had no independent memory of ever having submitted the contract on the Nashville job to Travelers. He believed that it had been done because that had been the practice when the exclusion of the 6109 endorsement was required. The Policy provided certain protection for C. F. W., with Endorsement 6109 included in the Policy. It was not always removed and was only done on a job to job basis. It required an affirmative act on the part of C. F. W. in order to have the effect of this endorsement removed. Habit or custom will not have probative value unless it is of sufficient regularity to make it probable that it would be carried out in every instance or in most instances. Commercial Standard Ins. Co. v. Gordon's Transports, 154 F.2d 390, 394, C.A.6. There was no such established custom here. We regard this evidence as purely negative and of no probative value.

C. F. W. entered into its contract with the City of Nashville on or about August 1, 1956. On August 13, 1956, Travelers issued a certificate of insurance to the Public Works Division of the City of Nashville, the pertinent parts of which are shown in footnote one.[1] It was stated in the certificate that, "The insurance afforded is subject to all of the terms of the policy applicable thereto." We cannot say that this certificate as issued contemplated the removal of the exclusionary clauses. This certificate was issued on Travelers Insurance Policy No. SL-5241030 which expired on September 30, 1956 (affidavit of Maclin P. Davis, Jr., one of the attorneys for C. F. W.). The policy in question here became effective on September 30, 1956, and it is conceded that the damage which is the subject of this action occurred after that date.

Mr. Carter said in his deposition that it was the intention of the parties that the Policy be issued in September, 1956, with the 6109 endorsement attached. "That was what was normal and I expected the same thing." Under these circumstances we think the certificate

1. "This is to certify that policies of insurance as described below have been issued to the insured named below and are in force at this time. If such policies are canceled or changed during the periods of coverage as stated herein, in such a manner as to affect this certificate, written notice will be mailed to the party designated below for whom this certificate is issued."

\* \* \* \* \*

"4. Coverages for which insurance is afforded: Workmen's Compensation and Employers' Liability \* \* \*"

\* \* \* \* \*

"Bodily Injury Liability—except automobile \* \* \*"

\* \* \* \* \*

"Property Damage Liability—except automobile \* \* \*"

\* \* \* \* \*

"Bodily Injury Liability—automobile: \* \* \*"

\* \* \* \* \*

"Property Damage Liability—automobile: \* \* \*"

\* \* \* \* \*

"Description of Operations:
Excavation N. O. C. #6217-41; Sewer Construction—all operations etc. #6302; Water Mains or connection construction #6319; Carpentry N. O. C. #5403; . Painting, decorating or paper hanging N. O. C. #5473; Masonry N. O. C. #5022; Electrical wiring within buildings #5190; Carpentry in the construction of detached private residences #5645; Contractors construction or erection etc. #5606.

Including use of explosives if necessary.
The insurance afforded is subject to all of the terms of the policy applicable thereto.

This certificate is executed by The Travelers Insurance Company as respects insurance afforded by that company under the policies designated above, it is executed by The Travelers Indemnity Company as respects insurance afforded by that company under the policies designated above."

would not constitute any evidence in support of C. F. W.'s claims.

It was essential that C. F. W. take some affirmative action to have the endorsement removed. Such action was taken six times under the policy which expired September 30, 1956, and twice under the policy now before us, subsequent to the Nashville job.

■ It is argued that C. F. W. was lulled into a false sense of security by the following incident.

"When we were on the north side of Harrison Street, we were right in front of the Englert building, and at that place and time there was a slide or a small cave-in in the ditch at that place. And the concrete steps in front of the Englert building pulled away from the building by an inch or inch and a half, in other words, precipitated. One of the Englert personnel came out, and said it looked as if we might damage that building, and we examined it together, the superintendent, or whoever was there. I just know I was there, and somebody from Englert. And he asked if we were covered by insurance, and we assured him we were covered by insurance, and at that time, I called somebody in Travelers, whether I was—I was in Nashville, whether it was somebody in Nashville, or whether I came home and called Bobby Allen, or called him long distance, I don't know. But someone I called to check, and be sure that we were covered, if we did damage to this building. And they said, or at least I was satisfied that we were, and so told this gentleman with Englert. And nothing happened, the crack didn't get any larger, and we passed on by it, and I forgot all about it because that was the end of that."

* * *

This would not constitute an estoppel and is not analogous to the situation in Henry v. Southern Fire & Cas. Co., 46 Tenn. App. 335, 330 S.W.2d 18. There, at the time the insurance policies were purchased, the agent assured the owners that they were fully covered. It was a part of the consideration. The whole incident relied on here is too indefinite. Mr. Carter does not know to whom he talked, what he said nor what was said to him. Nothing ever developed out of the incident and he forgot it. He only has a vague idea that he was satisfied that his company had coverage.

The basic policy contained an exclusionary clause referred to as contractual coverage. This coverage related to the "save harmless" clause of the contract between the City of Nashville and C. F. W. It reads as follows:

"This policy does not apply: (a) to liability assumed by the insured under any contract or agreement except under Coverages A and C, (1) a contract as defined herein or (2) as respects the insurance which is afforded for the Products Hazard as defined, a warranty of goods or products."

This coverage was to be obtained by C. F. W. submitting to Travelers its contract wherein it agreed to indemnify or "save harmless" those with whom it contracted and by securing an endorsement nullifying the exclusion. Mr. Carter testified on deposition that as far as he knew, his company never specifically asked Travelers to insure its obligation to the City of Nashville under the "save harmless" clause of the contract. There is no claim that C. F. W. could submit further evidence on this question at a trial.

■ Considering all of the evidence in the most favorable light to C. F. W., we conclude that there is not sufficient evidence to warrant submitting the case to the jury.

■ We do not reach the question of attorneys' fees. If there is no liability under the Policy there can be no recovery of attorneys' fees.

The judgment of the District Court is affirmed.